1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**R23 LAW APC**
Peng Shao (319624)
Peng@R23Law.com
225 S. Grand Ave
Los Angeles, CA 90012
Tel:  888-533-2948
Fax:  415-558-0230

*Attorney for Plaintiff*
*YASMIN MONDRAGON*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **YASMIN MONDRAGON**, an individual;<br><br>          Plaintiff,<br><br>   v.<br><br>**EXPERIAN INFORMATION SOLUTIONS INC; EQUIFAX INFORMATION SERVICES, LLC; TRANSUNION, LLC; and DOES 1 to 50,** inclusive;<br><br>          Defendants. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>  1. **FAIR CREDIT REPORTING ACT;**<br><br>  2. **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT**<br><br><br>**JURY TRIAL DEMANDED** |



Plaintiff YASMIN MONDRAGON ("Plaintiff"), an individual files this Complaint and Demand for Jury Trial against Defendants EXPERIAN INFORMATION SOLUTIONS INC ("Experian"); EQUIFAX INFORMATION SERVICES, LLC ("Equifax"); TRANSUNION, LLC ("TransUnion"); and DOES 1 to 50, inclusive (collectively "Defendants"), and based on information and belief, hereby alleges and complains as follows:

## INTRODUCTION

1.      This is a case about a consumer who found inaccurate, incomplete, and unverifiable information on her credit report. she then disputed the false information on her credit report to Defendants, but Defendants continued to report a variety of false information (including incomplete information and information which could not be verified) on Plaintiff's credit reports in violation of the FCRA and CCRAA.

2.      Plaintiff brings this action for actual damages, statutory damages, punitive damages, injunctive relief, attorney fees, and costs, against Defendants for violations of the Fair Credit Reporting Act 15 U.S.C. §§ 1681 *et seq*., (hereinafter "FCRA"), and for violations of California Civil Code §§ 1785 *et seq*. (hereinafter "CCRAA").

3.      Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4.      While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5.      All violations by Defendants were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

6.      Unless otherwise indicated, the use of a Defendants' names in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties,

subrogees, representatives, and insurers of that Defendant named.

### THE FCRA

7.     The FCRA was originally enacted in 1970 with the express purpose to require that consumer reporting agencies adopt and implement "reasonable procedures" for ensuring that credit information about a consumer was collected, maintained, and dispensed "in a manner which is fair and equitable to the consumer with regard to the confidentiality, accuracy, relevancy and proper utilization of such information …" 15 U.S.C. § 1681(b); *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007). The Congressional findings noted that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with of fairness, impartiality, and respect for the consumer's right to privacy." *Id.*

8.     Consumer Reporting Agencies ("CRA[s]") such as Defendants are not allowed to report false or incomplete or un-verifiable information. If a consumer realizes that there is false or incomplete information on their credit report, they have the right to dispute this with the CRA and are entitled to a reasonable investigation which must correct the inaccurate or incomplete information or delete the account if it is found to contain inaccurate or incomplete information or cannot be verified for accuracy. If the CRA can't figure it out on its own, it has to completely notify the creditor or "furnisher" of the information so that the furnisher can conduct its own investigation into the consumer's dispute and report back to the CRA. If after that investigation, the information is still inaccurate or incomplete, or if it can't be verified, the CRA must delete such information or fix it. 15 U.S.C. § 1681i(a)(5).

### THE CCRAA

9.     The CCRAA – California's version of the FCRA, was originally enacted in 1975. In language virtually identical to that found in the original FCRA legislation, the California Legislature stated the CCRAA's purpose was "to require that consumer credit reporting agencies adopt reasonable procedures" for handling credit information so as to ensure it was handled in a manner which was "fair and

COMPLAINT FOR DAMAGES

equitable to the consumer with regard to confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title." Cal Civ. Code § 1785.1(d).

## JURISDICTION AND VENUE

10.    Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 due to federal causes of action under 15 U.S.C. § 1681, and under 28 U.S.C. § 1332 due to diversity of citizenship.

11.    Jurisdiction is proper in this Court because the amount in controversy exceeds the jurisdictional minimum of this Court, and this case involves the violation of Federal statutes.

12.    Because all Defendants conduct business within the State of California, personal jurisdiction is established.

13.    Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

## PARTIES

14.    Plaintiff YASMIN MONDRAGON is a natural person and resident of San Bernardino County, California.

15.    Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c); 15 U.S.C. § 1681a(c); and, 15 U.S.C. § 1692a(3).

16.    Defendants Experian, Equifax, and TransUnion are business entities, doing business in the State of California as "consumer reporting agencies" as that term is defined by 15 U.S.C. § 1681a(f) (collectively referred to as "Consumer Reporting Agencies" or "CRAs"), and a "consumer credit reporting agency" under Cal. Civ. Code §§ 1785.3(d). Defendants receive negative credit information about consumers and which then publish such information in credit reports available to its subscribers.



R23 LAW

17.     The true names and capacities, whether individual, corporate (including officers and directors thereof), associate or otherwise of Defendants sued herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names, pursuant to the CCP § 474. Plaintiff is informed and believes, and thereon alleges that each Named Defendant and each Defendant designated as a Doe is involved in or is in some manner responsible as an officer, director, managing agent, principal, beneficiary, agent, co-conspirator, joint venturer, alter ego, third-party beneficiary, or otherwise, for the agreements, transactions, events and/or acts hereinafter described, and thereby proximately caused injuries and damages to Plaintiff. Plaintiff requests that when the true names and capacities of these DOE Defendants are ascertained, they may be inserted in all subsequent proceedings, and that this action may proceed against them under their true names.

18.     This action involves Plaintiff's "consumer report" as that term is defined by 15 U.S.C. § 1681a(d)(1) and "consumer credit report(s)" as that term is defined by Cal. Civ. Code § 1785.3(c).

19.     The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's credit worthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

## FACTUAL ALLEGATIONS

20.     Plaintiff is an individual residing in San Bernardino County, California.

21.     Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendants conducted and continues to conduct business in California.



22.    Consumer Reporting Agencies ("CRAs"), like Defendants, are in the business of collecting all kinds of information on ***everybody***. That information includes "[a]ny information … bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living…" 15 U.S.C. § 1681i(a)(d)(1).

23.    CRAs then sell this information to their customers who are referred to as "Subscribers." Subscribers are often banks, landlords, credit card issuers, employers, and others who believe that this historical information will predict their future relationship with whoever is applying for a loan, a job, a car, a house, or an apartment – that's why they buy the credit information from the CRAs.

24.    The reason that Subscribers are also referred to as "Furnishers" is because at the heart of the "Subscriber Agreement" with the CRAs is an obligation, but not just the obligation to pay the CRA for the information about a particular consumer – there's an obligation on the subscriber to furnish to the CRA all of the same types of information that the subscriber has on ***everyone else*** they do business with. This is how the CRA's get the personal information and make the money, over and over again.

25.    Plaintiff, like all other consumers in America, has no choice about whether private, for-profit companies like Defendants collect and sell information about them to "users" of credit reports.[1]

26.    Plaintiff's only rights are to have any and all such credit reporting done accurately and completely.

27.    Defendant are not allowed to report inaccurate information.

28.    Defendants are not allowed to report incomplete information.

---

[1] There are some technical differences in consumer reports and consumer disclosures but in this Complaint Plaintiff will use the common industry term of "credit report" which is also used in the official site to pull your free reports at www.AnnualCreditReport.com that the Federal Government forced the three credit bureaus -- Equifax, Experian, and TransUnion – to set up for consumers.

COMPLAINT FOR DAMAGES

29.    When a consumer, such as Plaintiff, realizes there is inaccurate or incomplete information on their credit reports or consumer disclosures, Plaintiff has the right to dispute this information with Defendants.

30.    The consumer simply disputes (verbally by phone, online, by fax, or by mail) to Defendants and requests an investigation so that the inaccurate and/or incomplete information will either be corrected or deleted.

31.    Defendants must notify the furnisher of "all of the relevant information" of the consumer's dispute within the time limits set forth by the FCRA.

32.    Additionally, Defendants must do its own reasonable investigation into the dispute which includes examining all information Defendant has or can reasonably obtain to assist in the investigation.

33.    Defendants knows that it has an independent duty to investigate errors and omissions in the credit report, and that it's not enough that they simply "parrot" the furnisher's information. *Grigoryan v. Experian Info. Sols.*, 84 F. Supp. 3d 1044, 1064 (C.D. Cal. 2014) (rejecting argument that report is "accurate" if CRA correctly reports information furnished by creditor).

34.    Defendants know that it must delete inaccurate information. *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 1035 (9th Cir. 2001) ("If an item is found to be inaccurate or unverifiable, the CRA must delete the information from the credit report.").

35.    Defendants know that it must "promptly" delete incomplete information. 15 U.S.C. § 1681i(a)(5)

36.    On or about July 2024, Plaintiff discovered incomplete and inaccurate information on her credit reports from Defendants.

37.    On or about October 2024, Plaintiff began sending multiple written disputes to Defendants via certified mail disputing inaccurate and incomplete information appearing on her credit reports from Defendants.

///

COMPLAINT FOR DAMAGES



## EXPERIAN DISPUTES

38.    On October 1, 2024, Plaintiff sent her first written correspondence to Defendant Experian via certified mail disputing inaccurate and incomplete information appearing on her Experian credit report.

39.    Plaintiff repeatedly disputed the completeness and accuracy of the following accounts on her credit report with Defendant Experian ("Disputed Experian Accounts"):

    a.  ADS/COMENITY/VICTORIA – 539176XXXXXXXXXX

    b.  ALTAONE FCU – 100000XXXXXXXXXXX

    c.  DISCOVER BANK – 601100XXXXXXXXXX

    d.  JEFFERSON CAPITAL SYSTEMS – 378244XXXXXXX

    e.  MIDLAND CREDIT MANAGEMENT – 31724XXXX

40.    Defendant Experian received Plaintiff's first dispute on October 7, 2024.

41.    However, Defendant Experian failed to respond to Plaintiff's first dispute and failed to correct the incomplete and inaccurately reported information on Plaintiff's Experian Credit Report.

42.    On November 4, 2024, Plaintiff sent a second follow-up dispute letter to Defendant Experian regarding the Disputed Experian Accounts listed above.

43.    Defendant Experian received Plaintiff's second dispute on November 12, 2024.

44.    Overall, Plaintiff identified at least 19 distinct and separate errors on her Experian credit report and thus twice disputed to Defendant Experian concerning the Disputed Experian Accounts.

45.    The Disputed Experian Accounts were clearly described and identified.

## EQUIFAX DISPUTES

46.    On October 1, 2024, Plaintiff sent her first written correspondence to Defendant Equifax via certified mail disputing inaccurate and incomplete



information appearing on her Equifax credit report.

47. Plaintiff repeatedly disputed the completeness and accuracy of the following accounts on her credit report with Defendant Equifax ("Disputed Equifax Accounts"):

      a. BANK OF AMERICA – XXXXXXXX8274

      b. ALTA ONE FEDERAL CREDIT UNION – XXXXXXXX5449

      c. COMENITY BANK/VICTORIA'S SECRET – XXXXXX6830

      d. RUSHMORE LOAN MANAGEMENT – XXXXXXXX6549

      e. SANTANDER CONSUMER USA – XXXXXXXX1000

      f. WESTLAKE SERVICE INC – XXXXXXXX58

      g. WESTLAKE SERVICE INC – XXXXXXXX89

      h. WESTLAKE SERVICE INC – XXXXXXXX99

      i. MIDLAND CREDIT MANAGEMENT – XXXXXXXX3426

      j. JEFFERSON CAPITAL LLC – XXXXXXXX1904

48. Defendant Equifax received Plaintiff's first dispute on October 9, 2024.

49. However, Defendant Equifax failed to respond to Plaintiff's first dispute and failed to correct the incomplete and inaccurately reported information on Plaintiff's Equifax Credit Report.

50. On November 4, 2024, Plaintiff sent a second follow-up dispute letter to Defendant Experian regarding the Disputed Equifax Accounts listed above.

51. Defendant Equifax received Plaintiff's second dispute on November 11, 2024.

52. Overall, Plaintiff identified at least 37 distinct and separate errors on her Equifax credit report and thus twice disputed to Defendant Equifax concerning the Disputed Equifax Accounts.

53. The Disputed Equifax Accounts were clearly described and identified.

<u>TRANSUNION DISPUTES</u>

54. On October 1, 2024, Plaintiff sent her first written correspondence to

9

Defendant TransUnion via certified mail disputing inaccurate and incomplete information appearing on her TransUnion credit report.

55.     Plaintiff repeatedly disputed the completeness and accuracy of the following accounts on her credit report with Defendant TransUnion ("Disputed TransUnion Accounts"):

a.  ALTA ONE FCU – 1000000245074****

b.  ALTA ONE FCU – 446059301039****

c.  COMENITY BANK/VCTRSSEC – 539176109965****

d.  COMENITY/IKEA VISA – 406367302836****

e.  DISCOVER BANK – 601100250262****

f.  THE HOME DEPOT/CBNA – 603532100088****

g.  CREDIT COLLECTION SERVIC – 9827********

h.  MIDLAND CREDIT MANAGEMENT INC – 317247******

56.     Defendant TransUnion received Plaintiff's first dispute on October 9, 2024.

57.     However, Defendant TransUnion failed to respond to Plaintiff's first dispute and failed to correct the incomplete and inaccurately reported information on Plaintiff's TransUnion Credit Report.

58.     On November 4, 2024, Plaintiff sent a second follow-up dispute letter to Defendant TransUnion regarding the Disputed TransUnion Accounts listed above.

59.     Defendant TransUnion received Plaintiff's second dispute on November 13, 2024.

60.     Overall, Plaintiff identified at least 26 distinct and separate errors on her TransUnion credit report and thus twice disputed to Defendant TransUnion concerning the Disputed TransUnion Accounts.

61.     The Disputed TransUnion Accounts were clearly described and identified.

## COLLECTIVE FACTUAL ALLEGATIONS

62.    The Disputed Experian, Equifax, and TransUnion Accounts listed above are herein referred to collectively as the "Disputed Accounts."

63.    The errors relating to the Disputed Accounts were clearly spelled out for Defendants to comprehend and understand them.

64.    Defendants did comprehend and understand the disputed errors concerning the Disputed Accounts.

65.    The disputed errors consisted of inaccurate information and incomplete information on each of the Disputed Accounts.

66.    Upon information and belief, Defendants transmitted all of the relevant information in Plaintiff's disputes to the furnishers associated with the Disputed Accounts within the timeframe prescribed by the FCRA.

67.    Alternatively, upon information and belief, Defendant did NOT transmit all of the relevant information in Plaintiff's disputes to the furnishers associated with the Disputed Accounts within the timeframe prescribed by the FCRA.

68.    Either way, Defendants failed to fix the incomplete information or the inaccurate information, nor did it delete the Disputed Accounts.

69.    Defendants willfully failed to perform a reasonable investigation pursuant to Plaintiff's disputes.

70.    A reasonable investigation would have certainly resulted in the correction or deletion of the Disputed Accounts.

71.    If Defendants had performed even a negligent investigation, it is more likely than not that the inaccurate information and the incomplete information would have been deleted from Plaintiff's credit reports.

72.    Instead of performing reasonable investigations, Defendants have a policy, procedure, practice, custom, and habit of recklessly and intentionally refusing to investigate consumer disputes.



R23 LAW

73.    Pursuant to her rights under the FCRA (Section 1681i(a)(7)), Plaintiff asked Defendants to please provide a description of the procedure used to determine the accuracy and completeness of the information of the information in Plaintiff's report.

74.    Defendants DID NOT provide Plaintiff with such a description within 15 days of receiving the request from Plaintiff.

75.    Defendants willfully failed to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit file and consumer reports.

76.    Defendants willfully failed to maintain reasonable procedures to prevent Plaintiff's credit information from including incomplete information or inaccurate information related to the Disputed Accounts.

77.    The result is that obviously wrong, inaccurate, unverifiable, and/or incomplete accounts are being allowed to stay on Plaintiff's credit reports published by Defendants.

78.    Defendants know that furnishers sometimes intentionally withhold payment information that thereby results in inaccurate reporting.[2]

79.    Defendants know that the furnishers associated with the Disputed Accounts are particularly unreliable furnishers of consumer credit information because Defendants has been sued in the past for failing to investigate and correct inaccurate consumer credit information furnished to it by those companies.

80.    Within the five years previous to the filing of this Complaint, Defendants prepared and distributed one or more consumer reports pertaining to Plaintiff that contained incomplete information or inaccurate information related to the Accounts.

---

[2] Lenders intentionally withhold positive payment histories or reporting data from the CRAs for accounts they otherwise report. Mortgage lenders and credit card issuers sometimes do so for strategic reasons. Their objective is to shield their customers from competing lenders who might otherwise solicit them. This practice, which was especially common among subprime lenders, results in consumer reports that do not accurately reflect the positive payment histories for borrowers, especially high-interest borrowers in the subprime market.



81.    Plaintiff requested a full credit file disclosure pursuant to Section 1681g of the FCRA from Defendants and, upon information and belief, has not received all of Defendant's credit files or all of the information contained in those credit files.

82.    Defendants knows that a full file disclosure is more than what is provided in a consumer report or a credit report – it is all the information the credit bureau has on the consumer.

83.    The documents Plaintiff received from Defendants contained what appeared to be information about Plaintiff's credit accounts, however most of the account numbers were omitted or partially obscured. Because of this, Plaintiff is confused and unable to compare the information provided with Plaintiff's own records, statements, and loan origination documents, and is therefore unable to monitor the disclosure of credit information to third parties for errors or inaccuracies or to determine whether or not they are a victim of credit identity theft.

84.    The Federal Trade Commission says "it is our view that a CRA that always scrambles or truncates account (or social security) numbers does not technically comply with Section 609 [15 U.S. Code § 1681g] because it does not provide 'accurate' (and perhaps not 'clear') disclosure of 'all information' in the file." [3]

85.    Upon information and belief, Plaintiff's creditors furnish complete account numbers to Defendants.

86.    The documents provided by Defendants did NOT contain the date of first delinquency for the Disputed Accounts. Because of this, Plaintiff is confused and unable to determine when derogatory credit information will become obsolete under the FCRA and is therefore unable to monitor the disclosure of obsolete derogatory credit information to third parties.

87.    Upon information and belief, Plaintiff's creditors furnish the dates of

---

[3] FTC Opinion Letter (Advisory Opinion to Darcy, June 30, 2000).

first delinquency to Defendants.

88.    Defendants regularly suffers consumer complaints to the Consumer Financial Protection Bureau and is frequently sued for the exact behavior described in the foregoing paragraphs.

89.    A 2004 study by the non-profit consumer advocacy group Consumer Reports (est. 1936) revealed that 44% of respondents who were able to check their credit reports (25% were not able to obtain their credit reports) found at least one error. The report also found that credit reporting errors may have more than doubled since 2021, with 645,000 complaints submitted to the Consumer Financial Protection Bureau in 2023, compared to 308,000 in 2021.

ACTUAL DAMAGES

90.    As a result of Defendants' actions, omissions, and inaction, Plaintiff has suffered damage by loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, invasion of privacy, mental and emotional pain, anguish, humiliation and embarrassment, as well as physical manifestations of these emotional states. All such damages have been suffered in the past, are continuing to be suffered, and such damages will continue in the future.

**FIRST CAUSE OF ACTION**

Violation of the Fair Credit Reporting Act (FCRA)

*[Against All Defendants]*

91.    Plaintiff hereby re-alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

92.    Plaintiff is a "consumer" as this term is defined by 15 U.S.C. § 1681a(c) of the FCRA. Defendants are "consumer reporting agenc[ies]" as defined in 15 U.S.C. § 1681a(f) of the FCRA.

93.    Defendants, and each of them, willfully violated the provisions of the Fair Credit Reporting Act in *at least* the following respects:

14

a. By willfully and negligently failing, in the preparation of the consumer report concerning Plaintiff, to follow reasonable procedures to assure maximum possible accuracy of the information in the report;

b. By willfully and negligently failing to correct, after receiving ample notice, information about the Plaintiff which defendants knew, or should have known, was incomplete and/or inaccurate;

c. By willfully and negligently failing to correct and/or delete the incomplete and inaccurate information in Plaintiff's file after conducting an investigation;

d. By willfully and negligently failing to conduct an adequate investigation or reinvestigation of Plaintiff's complaints, and by willfully and negligently failing to implement corrective actions once the outcome of such investigations were known, or should have been known, to the defendants;

e. By willfully and negligently failing to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof;

f. By failing to clearly and accurately disclose to Plaintiff all information in Plaintiff's file at the time of Plaintiff's request for that information;

g. By failing to provide the furnishers with all the relevant information regarding Plaintiff's disputes;

h. By failing to review and consider all relevant information submitted by Plaintiff in her disputes;

i. By failing to promptly delete the inaccurate and incomplete items of information from Plaintiff's credit files or modify the items of information such that they were no longer inaccurate or incomplete;

COMPLAINT FOR DAMAGES



R23 LAW

j.  By failing to provide Plaintiff with a description of the procedure used to determine the accuracy and completeness of the disputed credit information within 15 days of receiving Plaintiff's request;

k.  By failing include Plaintiff's 100 word statement in Plaintiff's credit report with respect to each of the disputed accounts;

l.  By willfully and negligently failing to provide notice to Plaintiff of the furnishing of negative credit information to credit reporting agencies.

94.    Plaintiff alleges that Defendants, and each of them, have willfully violated FCRA with respect to Plaintiff and towards others similarly situated, rendering Defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

95.    As a proximate result of the actions of the Defendants, and each of them, Plaintiff has been damaged in an amount which will be proven at time of trial. As provided under the FCRA, for every willful violation of the FCRA, Plaintiff is entitled to actual damages, pain and suffering, punitive damages, penalties, costs and attorney's fee.

## SECOND CAUSE OF ACTION

### Violation of the Cal. Consumer Credit Reporting Agencies Act (CCRAA)

*[Against All Defendants]*

96.    Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

97.    Plaintiff is a "consumer" as defined by *Cal. Civ. Code* § 1785.3(b).

98.    Plaintiff alleges that the Defendants lack reasonable procedures to prevent the violations alleged above and similar violations.

99.    Defendants should have determined that their reporting was inaccurate

through review of their own account notes and records; and, as a result of the information provided with Plaintiff's disputes.

100.   On one or more occasions within the two years prior to the filing of this action, Defendants violated the CCRAA by failing to promptly allow Plaintiff to visually inspect a decoded written version all information in Plaintiff's file at the time of Plaintiff's request for that information.

101.   Plaintiff has suffered both general and special damages according to proof. In addition, Plaintiff contends that the Defendants willfully violated the California Consumer Credit Reporting Agencies Act by continuously furnishing and reporting credit information which was known, or which should have been known, to have been inaccurate and incomplete.

102.   In addition to general and special damages according to proof, Plaintiff seeks the maximum prescribed statutory penalty against the Defendants for each and every separate violation of the California Consumer Credit Reporting Agencies Act.

103.   The conduct, actions and inactions by Defendants were willful, rendering Defendants liable for punitive damages in an amount of up to $5,000 for each violation to be determined by the Court pursuant to Cal. Civ. Code § 1731(a)(2)(B). In the alternative, Defendants were negligent entitling the Plaintiff to recover under Cal. Civ. Code § 1731(a)(1).

104.   Plaintiff also seeks attorney's fees and costs from the Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1.    For declaration that Defendants' practices violate the law;

2.    For actual, compensatory, special, and general, damages in an amount according to proof;

3.    For punitive damages in an amount according to proof;

4.    For statutory penalties and punitive damages for each separate statutory



violation where allowed by statute;

5.    For pre- and post- judgment interest;

6.    For reasonable attorney's fees and costs;

7.    For injunctive relief as applicable, and

8.    For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

DATED:  November 13, 2024

BY:  _____
        Peng Shao, ESQ

**R23 LAW APC**
Peng Shao

*Attorney for Plaintiff YASMIN MONDRAGON*

COMPLAINT FOR DAMAGES



## ELECTRONICALLY STORED INFORMATION REQUEST

This notice is to demand that you preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issues in the above-entitled matter. This specifically includes, but is not limited to, all information pertaining to the above matter, including specifically all recordings of any telephone communication between your company and Plaintiff.

As used in this request, "you" and "your" or "your client" refers to your organizations, and its predecessors, successors in interest, assignees, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, employees, servants, agents, attorneys, and accountants.

Much of the information subject to disclosure or responsive to discovery is stored on your client's current and former computer systems and other media and devices (such as: personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (for example and not as an exclusive list) potentially relevant information whether electronically, magnetically or optically stored.

This preservation obligation extends beyond ESI in yours or your client's care, possession or custody and includes ESI in the custody of others that is subject to your client's direction or control. You must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your client's obligation to do so, and you must try to secure their compliance.

COMPLAINT FOR DAMAGES